# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 8th day of June, 2017.*

Dora L. Adkins,                                                                          Appellant,

  against          Record No. 160685
                     Circuit Court No. 15-1984

CP/IPERS Arlington Hotel LLC,                                                   Appellee.

Upon a Petition for Rehearing and a Rule to Show Cause

In this order, we consider whether to impose a pre-filing injunction against a pro se litigant who has engaged in a practice of vexatious litigation. For nearly a decade, the Petitioner has filed numerous pleadings in this Court, all of which have been meritless. In the interest of preserving judicial resources and protecting unwitting defendants, we feel compelled to address Petitioner's habitual filing of meritless appeals.

I.        Facts and Proceedings

On April 7, 2017, this Court issued a Rule to Show Cause against Dora L. Adkins ("Adkins" or "Petitioner"), directing her to show cause why she should not be prohibited from filing any future pro se petition for appeal, or other pleading in this Court, without first obtaining leave of court. The issuance of this Rule was prompted by Adkins' petition for rehearing in *Adkins v. CP/IPERS Arlington Hotel, LLC*, Rec. No. 160685. On January 30, 2017, this Court refused Adkins' petition for appeal in that case after determining there was no reversible error.

The underlying case is only the latest in a string of frivolous lawsuits initiated by Adkins as a pro se litigant. In this particular case, Adkins filed a complaint against CP/IPERS Arlington Hotel, LLC ("CP/IPERS") in the Circuit Court of Arlington County ("trial court") alleging breach of contract and gross negligence. Adkins alleged she was a guest at the Shirlington,

Virginia Hilton Garden Inn for several days in August 2015. In her second amended complaint, Adkins alleged her hotel room had an unpleasant odor, no bath soap, a large stain on the carpet, and a Duvet covering that appeared unchanged following the departure of the previous guest. Adkins also claimed there was a problem with the door lock and that she suffered a severe, debilitating headache after a hotel employee sprayed a chemical on the lock. Adkins alleged she was moved to a different room which also had an unpleasant smell, a noisy air conditioner, a missing light bulb, and stains on the shower wall. Once she was moved, Adkins claimed the housekeeping staff was instructed to "watch her" and that someone entered her room despite the placement of a "Do Not Disturb" sign on the door. Adkins further alleged she was forced by management to leave the hotel, but in a subsequent paragraph of her complaint, she stated she was ready to check out. Based on these alleged facts, Adkins claimed she was a victim of "Copy-Cat Hate Crimes" and "Health and Safety Hazards" at every Hilton Hotel in Northern Virginia. The hotel filed a demurrer to Adkins' second amended complaint, which the trial court sustained without leave to amend. The trial court dismissed the case with prejudice and Adkins unsuccessfully petitioned this Court for an appeal.

In its brief in opposition to the petition for appeal, CP/IPERS accurately summarized Adkins' longstanding pattern of filing frivolous lawsuits against hotels and other businesses:

> Pro Se Plaintiff Adkins is a habitual plaintiff against various hotels in the Northern Virginia area. She has over 14 lawsuits filed for identical problems, situations, and issues at the hotels, and she seeks the same remedies in each case. Pro Se Plaintiff Adkins continues to misuse the legal system and has filed Petitions for Appeal to multiple appellate courts on numerous occasions prior to this one.

(CP/IPERS' Brief in Opp. at 1).

2

CP/IPERS is correct. Since 2009, Adkins has filed 27 petitions for appeal in this Court,[1] with six of those petitions filed in 2016 alone. Adkins has also filed 21 petitions for rehearing. Additionally, Adkins has filed at least 41 pro se civil actions in the circuit courts of Northern Virginia, including 20 cases in the Circuit Court of Fairfax County, 17 cases in the Circuit Court of the City of Alexandria, and four cases in the Circuit Court of Arlington County. In these various lawsuits, Adkins has asserted breach of contract and tort claims against a host of service-industry defendants whom she alleges intentionally harmed her. Adkins' complaints contain baseless allegations predicated on her belief that she is being intentionally subjected to noxious fumes, poisoned by food she consumes at restaurants, and defrauded by various retail workers and hotel proprietors. For example, in her most recent petitions for appeal, Adkins has alleged:

- That she suffered severe emotional distress and became bedridden with stress when, upon withdrawing $350 from a BB&T bank in Oakton, Virginia, she was given counterfeit money

---

[1] Those petitions are: *Adkins, Trustee v. Hallmark Condominium Unit Owners Association*, Record No. 102297; *Adkins v. Fairfax County School Board*, Record No. 092357; *Adkins v. Goldstein*, Record No. 102358; *Adkins v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.*, Record No. 102449; *Adkins v. HEI Tyson's Corner, LLC*, Record No. 111454; *Adkins v. Hallmark Condominium Unit Owners Association*, Record No. 112282; *Adkins v. O'Neil Virginia Holdings, LLC*, Record No. 130383; *Adkins v. Ackerman and Associates*, Record No. 131896; *Adkins v. Davidson Hotel Company, LLC*, Record No. 131897; *Adkins v. High Velocity Hospitality, LLC*, Record No. 140431; *Adkins v. American Service Center Associates, LLC*, Record No. 140491; *Adkins v. Fair Oaks Inn, LLC*, 140690; *Adkins v. King Street Station and Hotel Associates, LLC*, Record No. 140872; *Adkins v. Hilton Worldwide, Inc.*, Record No. 140875; *Adkins v. Apple Federal Credit Union*, Record No. 140882; *Adkins v. Alexandria Hotel Associates, LLC*, Record No. 141334; *Adkins v. The Ritz-Carlton Hotel Company, LLC*, Record No. 150574; *Adkins v. Renaissance Hotel Operating Company*, Record No. 150623; *Adkins v. HEI Tyson's Corner, LLC*, Record No. 151510; *Adkins v. American Service Center Associates, LLC*, Record No. 151511; *Adkins v. W-LCP Alexandria VII, LLC*, Record No. 160570; *Adkins v. Government Employees Insurance Company*, Record No. 160578; *Adkins v. CP/IPERS Arlington Hotel, LLC*, Record No. 160685; *Adkins v. JBG/Tysons Hotel, LLC*, Record No. 161145; *Adkins v. HBL, LLC*, Record No. 161164; *Adkins v. Noodles & Company*, Record No. 161238; *Adkins v. BB&T*, Record No. 170112.

3

containing "more than one president's portrait [ ] on the face of a five-dollar bill." *See*

*Adkins v. Branch Banking and Trust Company*, Rec. No. 170112.

- That as a result of eating a pasta meal at Noodles & Company, she suffered "an internal

severe pain injury" and "severe stomach injury of ringworms externally." *See Adkins v.*

*Noodles & Company*, Rec. No. 161238.

- That the Mercedes-Benz dealership in Tysons Corner, Virginia, intentionally performed a

defective replacement of the brakes on her vehicle, causing the brakes to squeak loudly. *See*

*Adkins v. HBL, LLC*, Rec. No. 161164.

- That the GEICO insurance company refused to compensate her for "two very small and light

scratches" and a "1-inch somewhat deep scratch" that she discovered when her vehicle was

parked overnight outside a hotel. *See Adkins v. Government Employees Insurance Company,*

Rec. No. 160578. Adkins also sought punitive damages because GEICO's employees "acted

intentionally and maliciously" toward her, lacked "the basic knowledge regarding 'how to'

process a claim for damages," and caused her to "waste [her] time."

- That she contracted ringworm, suffered a migraine, and was exposed to dog urine and toxic

chemicals while staying in a guest room at the Sheraton Premier Tysons Hotel. *See Adkins v.*

*JBG/Tysons Hotel,* Rec. No.161145. In the *JBG/Tysons Hotel* case, Adkins attached a

document to her complaint which JBG described in its Brief in Opposition:

> Exhibit #12 to the Complaint is a several page set of allegations
> titled "Pyramid: A Theory of Conspiracy." In this document,
> Petitioner makes a litany of allegations against individuals and/or
> companies which purportedly make up the supposed conspiracy
> against her. These groups include her former condominium
> association; certain hotels; Whole Foods; and family members.
> Petitioner alleges that a member of the condominium association
> had vandalized her property by introducing poisonous fumes into

4

the premises; that family members had attempted to poison her and took out a fraudulent life insurance policy against her; that certain hotels had allowed poisonous fumes to permeate her room and caused her to suffer from migraine headaches; and that she had requested free food from Whole Foods due to hunger.

Petitioner claims that these groups of individuals and corporations have somehow conspired to cause her the injuries she now alleges. And estimates that number of persons that have conspired against her to total approximately 3,500. The Exhibit also includes a historical accounting of the multitude of lawsuits filed by Petitioner against various companies alleging near-analogous claims, including: "chemical-like substances" and/or fumes which caused her to suffer headaches; food tampering; unauthorized entry into her guestroom; "Copycat Hate Crimes"; disturbing her while a "Do Not Disturb" sign was placed; skin irritations; being watched by staff; contamination of linens and toiletries; accusations of the use of counterfeit bills; tampering with personal items in her guestroom while she was out of the room; denial of housekeeping services; issues with amenities; and vandalism of her property by hotel staff.

(JBG's Brief in Opposition, at 5-6).

- That she suffered an insect bite, a severe headache, and internal bleeding during her stay at the Hilton Alexandria Old Town Hotel. *See Adkins v. W-LCP Alexandria VII, LLC*, Rec. No. 160570. Moreover, Adkins alleged a multi-hotel conspiracy in which "employees at EVERY Hotel [] conspired by an agreement with one another . . . for purposes of subjecting the Petitioner to harmful and unlawful actions by criminal or unlawful means." Adkins claims:

> The Defendant, W-LCP Alexandria VII, LLC, caused the Petitioner to become seriously injured with a debilitating migraine headache and a headache the Petitioner can no longer quickly get rid of because of the constant inhalation of chemical-like and fume-like substances getting into her paid-for Guest room within a Hotel since approximately 2008. The Defendant, W-LCP Alexandria VII, LLC, have [sic] caused the Petitioner serious internal bleeding from the excessive forced use of *Excedrin for Migraine* and *Benadryl* for allergic reactions. The Petitioner is damaged severely because of the internal bleeding caused by an

5

outrageous action allegedly agreed upon and continuously committed by the Defendant; and unknown physical damages to the Petitioner's nose, throat, lungs and other main organs in her body. The Defendant, W-LCP Alexandria VII, LLC, caused the Petitioner to have no place to safely live while she remains displaced from a home because of the alleged agreed upon "acts of conspiracy" committed against the Petitioner in EVERY Hilton Brand Hotel since 2008.

(*Adkins v. W-LCP Alexandria VII, LLC*, Pet. for Appeal at 19).

## II. Analysis

As illustrated by these examples, Adkins has a lengthy history of filing vexatious, and frivolous actions in the circuit courts of the Commonwealth. Furthermore, she has consistently challenged the dismissal of those cases on appeal to this Court. Through her behavior over the past eight years, Adkins has unduly burdened opposing litigants and interfered with the administration of justice. Although we have never granted any of her petitions for appeal or petitions for rehearing, this Court has expended significant judicial resources in docketing, reviewing, hearing oral argument, and disposing of Adkins' frivolous petitions. Furthermore, Adkins has subjected dozens of innocent individuals and entities to the cost of defending against her meritless claims both in the trial courts and on appeal.

Code § 8.01-271.1 provides that a pleading must be "well grounded in fact and . . . not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." This statute imposes a good faith requirement on all pleadings, and it applies with equal force to pro se litigants. *See Shipe v. Hunter*, 280 Va. 480, 484, 699 S.E.2d 519, 521 (2010) ("For the protection of the public from harassment by frivolous, oppressive, fraudulent or purely malicious litigation, the General Assembly has chosen to hold attorneys *and pro se litigants* to a high degree of accountability for the assertions they make in

6

judicial proceedings.").

In *Switzer v. Switzer*, 273 Va. 326, 641 S.E.2d 80 (2007), we discussed "various restrictive measures [available] in dealing with litigants who have filed repeated frivolous appeals." We observed the widely-recognized practice in other jurisdictions of a "leave of court" requirement in which litigants are required to obtain permission from the court before filing other cases or appeals.

> Such "leave of court" requirements have been widely approved on appellate review because they do not automatically preclude a litigant from filing any type of appeal but merely subject the appeal to pre-filing scrutiny to ensure that the appeal is not frivolous or filed for the purpose of harassing the opposing party or the court.

273 Va. 332-33, 641 S.E.2d at 83-84.

In *Cromer v. Kraft Foods N. Am, Inc.*, 390 F.3d 812, 817 (4th Cir. 2004), the United States Court of Appeals for the Fourth Circuit recognized that a prefiling injunction is "a drastic remedy [which] must be used sparingly, consistent with constitutional guarantees of due process of law and access to the courts."

> In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* at 818. In *Cromer*, the court cautioned that even if the above factors are all met and a prefiling injunction is merited, the injunction must be narrowly tailored to fit the specific circumstances at issue. *Id.* "Absent this narrowing, a prefiling injunction, like any other

7

injunction, will not survive appellate review." *Id.*

Although it is not binding on this Court, we consider the Fourth Circuit's reasoning as persuasive authority. *Toghill v. Commonwealth*, 289 Va. 220, 227, 768 S.E.2d 674, 677 (2015). Applying the Fourth Circuit's four-factor *Cromer* test to this case, we find that Adkins has a history of (1) filing duplicative, vexatious lawsuits, (2) without any objective good faith basis, and (3) at the expense of the court system and opposing parties. With respect to the fourth factor, the adequacy of alternative sanctions, although monetary sanctions could be ordered pursuant to Code § 8.01-271.1, they would not prevent Adkins from filing future pleadings. This Court's objective is not to punish Adkins financially, but rather to protect Virginia citizens and business from the harassment and expense of unfounded litigation and also to preserve valuable judicial resources. For these reasons, imposing a pre-filing injunction appears to be the only appropriate sanction.

This Court has the inherent power to protect its jurisdiction from repetitious and harassing conduct that abuses the judicial process. *See In re Sindram*, 498 U.S. 177, 112 (1991). As the United States Supreme Court has noted, "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989). *See also*, *Hamilton v. Florida*, 945 So. 2d 1121, 1123 (Fla. 2006) ("This Court has a responsibility to ensure every citizen's right of access to the courts . . . [a] limitation on the petitioner's ability to file would further the constitutional right to access for other litigants because it would permit this Court to devote its finite resources to the consideration of legitimate claims filed by others.").

8

On May 9, 2017, Adkins filed an "Amended Response to Rule to Show Cause." Rather than persuade the Court to allow her to continue filing pro se appeals, Adkins' Response had the opposite effect. The pleading underscored the frequent and frivolous nature of Adkins' pro se litigation. At one point in her Response, Adkins actually listed and summarized each of the unsubstantiated lawsuits she has filed against Northern Virginia hotels. She once again alleged a "conspiracy" of crimes were committed against her by hotel staff and management. Adkins further claimed she would have suffered "loss of life" on multiple occasions absent "GOD's 12 Devine [sic] Interventions Bestowed Upon the Petitioner." Adkins argued "[t]here is no humanly possible way for the Petitioner to retain the facts and evidence for 41-civil cases . . . without GOD's Devine Intervention." (Resp. at 15).

> In all 41-civil cases, GOD provided the Petitioner the ability to record *every single* malicious detail presented in the Complaint and only allowed the Petitioner access to those details on GOD's terms.
> …
> In the 41-cases the Petitioner filed in the Circuit Courts involving claims of approximately 329-Physical Injuries and approximately 41 Intentional Infliction of Emotional Distress Injuries; some deadly physical injuries included the following: Brain and/or head injuries; Bacterial infections; Food poisoning; Ringworm infections which should never be labeled as frivolous; especially, that GOD intervened to preserve the life of the Petitioner.

(Resp. at 4, 9). This latest pleading, perhaps more than any other filing by Adkins over the past eight years, illustrated the troubling extent of her willingness to litigate the most minor injury, whether real or perceived. Adkins was further afforded the opportunity to orally address the full Court on June 8, 2017.

In order to prevent Adkins from continuing to file frivolous petitions for appeal, we find it necessary to impose a pre-filing injunction against Adkins in this Court. Accordingly, Adkins

9

shall be prohibited from filing any petition for appeal, motion, pleading, or other filing without (1) obtaining the services of a practicing Virginia attorney, whose filings would be subject to Code 8.01-271.1, or (2) obtaining leave of Court to file any pro se pleading.

## III.    Conclusion

For the reasons stated, we deny Adkins' petition for rehearing and we instruct the Clerk to comply with this order as it pertains to future filings.

This order shall be certified to the Circuit Court of Arlington County and shall be published in the Virginia Reports.

A Copy,

Teste:

Patricia L. Harrington, Clerk

By:

Deputy Clerk

10